**Wilfred YAZZIE, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**RAY VICKER'S SPECIAL CARS, INC., d/b/a Ray Vickers Auto Pawn, Defendant.**

**No. Civ. 97–0776–MV/WWD.**

United States District Court,
D. New Mexico.

July 6, 1998.

Richard Feferman, Susan Warren, Albuquerque, New Mexico, for plaintiffs.

John M. Kulikowski, Albuquerque, New Mexico, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

VAZQUEZ, District Judge.

**THIS MATTER** comes before the Court on Plaintiff's Motion for Class Certification filed April 8, 1998 **[Doc. No. 21]**. The Court, having considered the parties' pleadings, the relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED.**

### FACTUAL BACKGROUND

Defendant Ray Vickers Special Cars, Inc. ("Ray Vickers") owns and operates an auto pawn business in Farmington, New Mexico. When a customer pawns a motor vehicle at Ray Vickers, Ray Vickers issues the customer a standard pawn ticket and the customer leaves the vehicle with Ray Vickers. Ray Vickers also requires each person pawning a vehicle to pay a $30.00 "storage fee" for the motor vehicle.[1]

---

1. Defendant states that the initial $30.00 storage fee is assessed on the assumption that 30 days, or more, of storage may be required and that an actual storage fee was assessed at the rate of $1.00 per day. Plaintiff disputes that the fee was imposed at the rate of $1.00 per day. This

Plaintiff filed a putative class action suit alleging that Ray Vicker's motor vehicle pawn operation violates the Federal Truth in Lending Act ("TILA"), the New Mexico Pawnbrokers Act and the New Mexico Unfair Trade Practices Act. Specifically, Plaintiff alleges that the "storage fee" is a charge imposed incident to the extension of credit and that Ray Vickers' failure to include the "storage fee" as a Finance Charge is a violation of TILA and constitutes an excessive pawn service charge in violation of the New Mexico Pawnbrokers Act. Furthermore, Plaintiff alleges that the standard pawn ticket issued by Ray Vickers also contains numerous violations of TILA and the Pawnbrokers Act.

Plaintiff's instant motion seeks an order determining that the action may proceed on behalf of a class consisting of all persons who pawned their motor vehicles with Ray Vickers in the one-year period preceding the filing of Plaintiff's Complaint in this matter.

## DISCUSSION

Class actions serve three essential purposes: to facilitate judicial economy by avoidance of multiple suits on the same subject matter; to provide a feasible means for asserting rights of those who would have no realistic day in court if class action were not available; and to deter inconsistent results, assuring a uniform, singular determination of rights and liabilities. *Buford v. H & R Block, Inc.,* 168 F.R.D. 340 (S.D.Ga.1996). The plaintiff seeking class certification must establish that the proposed class satisfies all the requirements of subdivision (a) of Federal Rules of Civil Procedure Rule 23 ("Rule 23") and at least one of the requirements of subdivision (b) of Rule 23.

Rule 23(a) sets forth four prerequisites to a class action:

One or more members of a class may sue or be sued as representatives parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These prerequisites are mandatory and failure to establish just one bars class certification. *Rodger v. Electronic Data Systems Corp.,* 160 F.R.D. 532, 535 (E.D.N.C.1995).

If all four prerequisites in subdivision (a) are satisfied, subdivision (b) provides that a class action may be maintained if:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b).

Determination of a motion for class certification is a matter committed to the sound discretion of the trial court. *Boughton v. Cotter Corp.,* 65 F.3d 823, 826 (10th Cir. 1995). While the requirements for certification of a class action should be given a liberal rather than a restrictive construction, *Rodger,* 160 F.R.D. at 535, in deciding whether to certify a class, the court must perform a

---

factual dispute, however, is irrelevant for purposes of this motion.

rigorous analysis of whether the proposed class satisfies the requirements of Rule 23. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

### 1. Numerosity

 The first question under Rule 23(a) is whether "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The numerosity factor requires examination of the specific facts of each case and imposes no absolute limitations. *General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). To satisfy the numerosity requirement, the plaintiff must show that joinder is impracticable, not impossible. *O'Neil v. Appel,* 165 F.R.D. 479, 488 (W.D.Mich.1996). In determining whether joinder is impractical, the court must consider such factors as the size of the proposed class, the geographic dispersion of class members, the nature of the action, the size of individual claims, judicial economy, the financial resources of class members and whether the class members' names are easily ascertainable. *See Walco Investments Inc. v. Thenen,* 168 F.R.D. 315 (S.D.Fla.1996); *Robidoux v. Celani,* 987 F.2d 931 (2d Cir.1993), *on remand* 876 F.Supp. 575.

 It is undisputed that during the relevant time period 210 people pawned their vehicles at Ray Vickers in 280 transactions. Plaintiff maintains that the relevant class consists of all 210 persons who were (1) not provided with accurate or adequate disclosures required by TILA and (2) were charged a larger pawn service charge than is permitted by the Pawnbroker's Act. Defendant proposes that the class should be broken down into three subclasses—those who failed to redeem their automobile, those who redeemed their automobile, and those whose automobile is still in pawn.

It is undisputed that at the outset of every auto pawn transaction, Ray Vickers charged a $30.00 storage fee and provided each customer with a standardized pawn ticket. These facts, which are the subject of the allegations in Plaintiff's Amended Complaint,

are actions that occurred when the pawn transaction was initially consummated. Therefore, the results of the pawn transaction are irrelevant for purposes of the violations alleged in Plaintiff's Amended Complaint and the relevant class is the 210 people who pawned their motor vehicles at Ray Vickers in the year preceding the filing of Plaintiff's Amended Complaint.

Defendant argues that because all the names and addresses of potential class members are known, joinder is possible. However, the undisputed facts reveal that a high percentage of the persons who pawned their vehicles at Ray Vickers live on the Navajo Reservation where communications—whether via mail, telephone, newspaper or television—are frequently difficult. Therefore, while the names and addresses of the customers who pawned their cars during the relevant time period are known, the isolation of many of these customers makes joinder extremely difficult.

Another factor the Court considers in determining if joinder is impracticable is the financial resources of class members. When the financial resources of a class are limited, individual class members may not be able to assume the costs of litigation and therefore may be unable to secure relief if class certification is denied. This concern is exacerbated when a relatively small amount is recoverable by each potential litigant. Common sense suggests that people who pawn their motor vehicles for short periods of time at high interest rates have limited financial means. This common-sense observation is supported by the facts that the majority of the pawn loans were for less than $500, nearly half the vehicles pawned were over 20 years old, and many of the customers were unable to provide a telephone number.

Even though the names and addresses of the potential class members are known, the Court finds that the size of the class, the relative isolation of many members of the class, the low-income status of the class, and the small size of each member's claim support the conclusion that joinder is not practicable.

## 2. Commonality

■ Rule 23(a)(2) requires that there be issues of law or fact common to the class. Not all the factual or legal questions raised in a lawsuit need to be common, as long as a single issue is common to all class members. *Spencer v. Central States, Southeast and Southwest Areas Pension Fund,* 778 F.Supp. 985 (N.D.Ill.1991).

■ At the beginning of each pawn transaction, Defendant gave each customer an identical pawn ticket with the allegedly false and inadequate disclosures and charged each customer the $30.00 "storage fee." The common question presented by Plaintiff and each member of the class is whether this standardized course of conduct violated TILA and the Pawnbrokers Act. Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement of Rule 23(a)(2) is usually met." *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D.Ill.1984); *see also Seidman v. American Mobile Systems, Inc.,* 157 F.R.D. 354 (E.D.Pa.1994) (holding that allegations of common course of fraudulent conduct satisfy commonality requirement under Rule 23(a)). In this case, common questions of law or fact clearly predominate over individual concerns.

## 3. Typicality

■ The claims or defenses of the named plaintiff must be typical of, but need not be identical to, the claims or defenses of the class. "The claims and defenses of a named plaintiff are 'typical' within the meaning of Rule 23(a)(3) if they stem from the same event, practice, or course of conduct that forms the basis of the claims of the class and are based upon the same legal or remedial theory." *Rolex Employees Retirement Trust v. Mentor Graphics Corp.,* 136 F.R.D. 658, 663 (D.Or.1991).

■ At the inception of the pawn transaction, Plaintiff and each member of the class received identical pawn tickets with the allegedly false and inadequate disclosures and were charged the $30.00 "storage fee." The claims of Plaintiff and each member of the class all arise from the same alleged course of conduct by Defendant and are all based on the same legal theories. The named plaintiff's claims share the same essential characteristics as the claims of the class members and therefore fulfill the typicality requirement of Rule 23(a)(3).

## 4. Adequacy of Representation

■ Under Rule 23(a)(4), adequacy of representation is measured by two standards: first, the named plaintiff must not have interests antagonistic to those of the proposed class; second, the named plaintiff's attorney must be qualified, experienced, and competent to conduct the proposed litigation. *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285 (2d Cir.1992).

■ Defendant does not allege that Plaintiff has interests antagonistic to those of the class. Instead, Defendant reiterates its contention that the class is more appropriately considered as three subclasses and Plaintiff is only representative of the subclass consisting of customers who failed to redeem their automobile. This argument is without merit. The pertinent question in this case is whether the disclosures and charges appearing on the pawn tickets issued to each customer at the beginning of a pawn transaction violated TILA and the Pawnbrokers Act. The fact that Plaintiff eventually defaulted on his loan does not make his interests in this lawsuit antagonistic to the other class members who received the same pawn ticket. As discussed above, Plaintiff's interests are consistent with the interests of the members of the proposed class and these interests are not antagonistic.

Plaintiff's attorney has submitted an affidavit detailing his qualifications and experience. On the basis of this uncontroverted affidavit, the Court finds that Plaintiff's attorney is qualified, experienced and generally able to conduct the proposed litigation. Pursuant to Rule 23(a)(4), the Court finds that Plaintiff has shown that his counsel will provide fair and adequate representation of the class and that there is no conflict of interest between Plaintiff and other members of the proposed class.

Plaintiff has met his burden of demonstrating that this action satisfies all four of the class action prerequisites set forth in Rule 23(a). The Court must now determine if Plaintiff has satisfied one of the conditions set forth in Rule 23(b). Rule 23(b) sets forth three conditions under which a class action suit may be maintained. Plaintiff alleges that this action satisfies two of these conditions: first, Defendant acted on grounds generally applicable to the class and therefore injunctive and/or declaratory relief is appropriate; and second, questions of law or fact common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Court will first consider Plaintiff's argument that this suit may be maintained as a class action under subdivision (b)(3) because common questions of law or fact predominate and a class action is superior to other available methods of adjudication.

▇▇▇ To maintain a class action under subdivision (b)(3), Plaintiff must show that common questions of law or fact predominate over issues affecting only individual members and that a class action is superior to other means of conducting this case. Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) lists some of the pertinent factors to be considered in determining predominance and superiority:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b).

This case involves the legality of a standardized document and course of conduct. It is undisputed that Defendant issued the same standardized pawn ticket as well as charged the same $30.00 monthly "storage fee" to each person pawning a motor vehicle. The dispositive issue, therefore, is whether these acts violated the rights of Plaintiff and other members of the proposed class. Therefore, a "common nucleus of operative fact" exists for all of the alleged wrongful practices even though the amount of damages may differ among the members of the class depending upon the length of time the automobile was in pawn and whether the automobile was subsequently redeemed or sold. These undisputed facts confirm that common issues of law and fact clearly predominate over issues affecting only individual members of the class.

▇▇▇ A class action is "superior" to other available methods when there is a need to remedy a common legal grievance and where a class action serves to achieve economies of time, effort and expense. *Bryan v. Amrep Corp.*, 429 F.Supp. 313, 318 (S.D.N.Y. 1977). In this case, the class is manageable, no other suits are being maintained, and the concentration of actions in this forum is judicially efficient. Furthermore, the large number of lower-income plaintiffs with relatively small individual claims suggests that absent the class action mechanism, it is unlikely than any one litigant would be in a position to enforce his rights individually. As noted by Professors Wright, Miller and Kane in analyzing consumer protection class actions such as the instant one, "typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated." 7B Charles A. Wright *et al.*, Federal Practice and Procedure: Civil § 1778, at 59 (2d ed.1986). Even if requiring class members to bring individual lawsuits was not economically prohibitive, it would waste judicial resources and limit access to the courts. A class action is a superior means for fair and efficient resolution of the controversy.

Plaintiff has met his burden of establishing that this claim satisfies the four prerequisites for a class action under subdivision (a) of Rule 23 and is maintainable as a class action under subdivision (b)(3) of Rule 23. The

Court need not therefore consider Plaintiff's contention that the suit is also maintainable as a class action under subdivision (b)(2) of Rule 23.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Class Certification filed April 8, 1998 [**Doc. No. 21**] is hereby **GRANTED.**